This is an appeal from a judgment entered by the Adams County Common Pleas Court affirming four decisions of the Ohio Unemployment Compensation Review Commission.[2] The Review Commission reversed decisions of the Ohio Bureau of Employment Services, defendant below and appellee herein, finding that Brian G. Hill, Jerry E. Toller, and Stephen L. Carver, plaintiffs below and appellants herein, quit work with just cause, and affirmed a decision by the Ohio Bureau of Employment Services finding that Johnny B. Mason, also a plaintiff below and appellant herein, quit work without just cause.
Appellants assign the following error:
 "THE TRIAL COURT ERRED WHEN IT FOUND THAT APPELLANTS QUIT THEIR EMPLOYMENT WITHOUT JUST CAUSE AND AFFIRMED THE DECISION OF THE REVIEW COMMISSION DENYING APPELLANTS UNEMPLOYMENT BENEFITS."
Appellants worked in the masonry trade for Appellee Don Salyers Masonry, a commercial masonry and construction company based outside Cincinnati, Ohio in Florence, Kentucky. The company works at various job sites within a 150 mile radius of Florence. When appellants finished working for prevailing wage at school construction sites in Adams County, the company offered them employment for less money in Cincinnati. Appellants chose to quit their employment with the company rather than drive to work for less pay in Cincinnati.
All four appellants filed applications for unemployment compensation. We will review the facts and dates pertinent to each appellant separately.
 Stephen L. Carver
Appellant Stephen L. Carver, who worked for Appellee Don Salyers Masonry for a $21.45 per hour prevailing wage at Adams County job sites from July 22, 1996 until May 20, 1997, filed an application for unemployment compensation on May 28, 1997 when he was twenty-three years old. In his statement, Appellant Carver explained that he worked at the job site building a school in Manchester, Ohio, which is fifteen to sixteen miles from his home in Stout, Ohio. Upon completion of the project, Appellee Don Salyers Masonry offered Appellant Carver a job in Cincinnati, Ohio which is a ninety minute drive from his home. Although Appellant Carver earned $21.45 per hour in Manchester, Appellee Don Salyers Masonry offered him only $14 to $16 per hour for work at the Cincinnati job site.
On June 17, 1997, the Ohio Bureau of Employment Services allowed Appellant Carver's claim, finding that he "quit employment with Appellee Don Salyers Masonry by refusing to accept a transfer to new work" that is "not suitable under Sections 4141.29(E) and (F) of the Ohio Revised Code."
After Appellee Don Salyers Masonry appealed and the Bureau affirmed on reconsideration, Appellee Don Salyers Masonry appealed to the Ohio Unemployment Compensation Review Commission. On September 25, 1997, the Review Commission held a hearing before Hearing Officer Jeffery O. Schaffner.
At the hearing, Appellant Carver testified that: (1) he knew that Don Salyers Masonry worked at different job sites; (2) he knew that he might be asked to work at a different job site; (3) he drove an hour to work for a previous employer; (4) he earned $12 per hour from a previous employer; (5) Appellee Don Salyers Masonry offered him $17 to $18 per hour to work at the Cincinnati job site. Appellant Carver acknowledged that other employees currently participate in a vanpool to the Cincinnati job site.
Don Salyers, who is president of Appellee Don Salyers Masonry, testified at the hearing that: (1) employees in the masonry business must change job sites when a job is finished; (2) employees don't earn prevailing wage at all job sites; (3) Appellee Don Salyers Masonry is based outside Cincinnati, Ohio; and (4) the company needs to hire more employees.
On December 10, 1997, Hearing Officer Schaffner held against Appellant Carver in pertinent part as follows:
 "Prior to filing the claim for the week ending May 31, 1997, the claimant was employed by Don Salyers Masonry for a period that began on July 22, 1996 and ended on May 20, 1997. Claimant worked as a brick mason at a rate of $21.45 per hour.
 Claimant's last position with this employer was on a prevailing wage job located in Adams County, Ohio. Claimant had performed the majority of his services with this employer in Adams County, Ohio.
 On or about May 20, 1997, the claimant's services were no longer needed. The job in which the claimant was performing services had ended and the employer was to transfer the claimant to a new job site.
 This job site was in Cincinnati, Ohio. This is located in Hamilton County. This is one and a half hours from the claimant's residence, which is in Stout, Ohio.
 Claimant was offered a job there at a rate of pay of $17.00 to $18.00 per hour. At that point, the claimant declined the transfer as the pay was substantially less than he was making and because of the distance he was required to travel.
 At the time the claimant was hired, he was not promised that all his jobs would be in Adams County however, the majority of the jobs that claimant performed for this employer and the last job in which the claimant worked was in Adams County. Claimant was aware of the fact that the employer did work in Hamilton County and in the state of Kentucky.
 Claimant was also aware that the employer did not work only prevailing wage jobs however, the claimant had primarily worked only on prevailing wage jobs.
 When the claimant did refuse to transfer, the Hearing Officer finds he did resign as he was not willing to transfer to the new position because of the rate of pay and the distance he would have to travel."
Hearing Officer Schaffner reasoned in pertinent part as follows that Appellant Carver quit work without just cause:
 "The facts establish that claimant did resign his position when he refused to take a transfer to the job in Hamilton County. The facts also establish that this job was paying less than his previous position and was some distance from his home.
 The facts also establish that the employer did not promise the claimant that he would only work in Adams County and that he would only work on prevailing wage jobs. The claimant knew the employer had work in a variety of sites and that some jobs did not pay prevailing wage. He accepted these conditions at the time of hire.
 It is unreasonable for the claimant to quit because he was asked to work under these conditions. Individuals who work in the construction trade are required to travel and work at different rates of pay. The claimant does not have just cause to refuse to work under such conditions."
Hearing Officer Schaffner cited R.C. 4141.29(D)(2)(a) and (G) as the applicable law.
After the Unemployment Compensation Review Commission disallowed Appellant Carver's Application to Institute a Further Appeal, he filed a notice of appeal to the Adams County Common Pleas Court.
 Brian G. Hill
Appellant Brian G. Hill, who worked for Appellee Don Salyers Masonry for a $19.04 per hour prevailing wage at an Adams County site from May 13, 1996[3] until May 9, 1997,[4]
filed an application for unemployment compensation on May 27, 1997 when he was twenty-five years old. In his statement, Appellant Hill explained that he had been working at the job site in West Union, Ohio which is twenty minutes away from his home in Peebles, Ohio. Upon completion of the project, Don Salyers Masonry offered him a job in Cincinnati, Ohio which is a ninety minute drive from his home in Peebles, Ohio. Although he was earning $18.47[5] per hour in West Union, his employer offered him only $10 per hour for working at the Cincinnati job site.
On June 16, 1997, the Ohio Bureau of Employment Services allowed Appellant Hill's claim, finding that he "quit employment with Appellee Don Salyers Masonry by refusing to accept a transfer to new work" that is "not suitable under Sections 4141.29(E) and (F) of the Ohio Revised Code."
After Appellee Don Salyers Masonry appealed and the Bureau affirmed on reconsideration, Appellee Don Salyers Masonry appealed to the Ohio Unemployment Compensation Review Commission. On August 28, 1997, the Review Commission held a hearing before Hearing Officer Jeffrey Hersh.
At the hearing, Appellant Hill testified that: (1) he was not told that he would work for Don Salyers Masonry at only one job site; (2) Don Salyers Masonry offered him $12 per hour to work at the Cincinnati job site; and (3) he previously earned $8 per hour at the same Cincinnati job site while working for another employer.
Don Salyers, who is president of Appellee Don Salyers Masonry, testified at the hearing that: (1) employees in the masonry business must change job sites when a job is finished; (2) employees don't earn prevailing wage at all job sites; (3) Appellee Don Salyers Masonry needs to hire more employees.
On August 28, 1997, Hearing Officer Hersh held against Appellant Hill in pertinent part as follows:
 "The claimant, Brian G. Hill, was employed by Don Salyers Masonry from May 13, 1996 until May 17, 1997. He was a mason tender.
 Claimant was assigned to work at the West Union High School, approximately fifteen minutes from his home. This paid 'prevailing wage.' As that job was nearing completion, on May 16, claimant was offered work at a Proctor Gamble plant in Cincinnati. This was not prevailing wage. Claimant refused to transfer and turned in his hard hat.
 Before working for Don Salyers Masonry, claimant had worked at the Proctor Gamble site for Fluor Daniels. At Fluor Daniels, claimant earned $7.00 per hour."
Hearing Officer Hersh reasoned in pertinent part as follows that Appellant Hill quit work without just cause:
 "Claimant asserts that he would have been required to drive a long distance for a reduced wage. In the construction business, however, it is common that different jobs pay different rates. In his recent past, claimant had worked at the same job site for less money than offered by Salyers. The work, therefore, was suitable. Claimant quit work without just cause. The suspension in Section 4141.29(D)(2)(a), Revised Code of Ohio shall be imposed."
Hearing officer Hersh cited R.C. 4141.29(D)(2)(a) and (G) as the applicable law.
After the Unemployment Compensation Review Commission disallowed Appellant Hill's Application to Institute a Further Appeal, he filed a notice of appeal to the Adams County Common Pleas Court.
 Johnny B. Mason
Appellant Johnny B. Mason, who worked for Appellee Don Salyers Masonry for $19.04 per hour prevailing wage at an Adams County job site from October 5, 1996 until May 30, 1997, filed an application for unemployment compensation on June 15, 1997 when he was twenty-three years old. Although only the signature page of Appellant Mason's statement appears in the record transmitted on appeal, an "examiner's fact finding report" in the record indicates that Appellant Mason declined a transfer to a Cincinnati job site due to the distance and due to a proposed cut in pay from $19.04 per hour to $10.50 to $11 per hour. Appellant Mason had been working for Appellee Don Salyers Masonry at a job site about five miles away from his home in Lynx, Ohio.
On July 10, 1997, the Ohio Bureau of Employment Services disallowed Appellant Mason's claim, finding that he "quit without just cause."
After Appellee Mason appealed and the Bureau affirmed on reconsideration, Appellee Mason appealed to the Ohio Unemployment Compensation Review Commission. On October 17, 1997, the Review Commission held a hearing before Hearing Officer Robert S. Bush.
At the hearing, Appellant Mason testified that: (1) he was working for Appellee Don Salyers Masonry for $19.40 per hour plus benefits at job site in Peebles, Ohio, which was fifteen minutes from his home in Lynx, Ohio; (2) when that job site was finished, Appellee Don Salyers Masonry offered him work at a job site in Cincinnati for $10 per hour without benefits; (3) the Cincinnati job site is eighty to ninety minutes away from his home; (4) he worked at different job sites as a brick mason for a previous employer; and (5) he worked for $8 per hour for a previous employer.
Don Salyers, who is president of Appellee Don Salyers Masonry, testified at the hearing that Appellee Mason's home in Lynx, Ohio is fifty-five miles from the Cincinnati job site and Appellee Mason was offered $12 to $13 per hour for that job plus $10 per diem for travel expenses. Salyers further testified that: (1) employees in the masonry business must change job sites when a job is finished; (2) employees don't earn prevailing wage at all job sites; (3) Appellee Don Salyers Masonry is based in the Cincinnati, Ohio area; and (4) the company needs to hire more employees.
On December 12, 1997, Hearing Officer Bush held against Appellant Mason in pertinent part as follows:
 "Claimant worked for Don Salyers from May 28, 1997 to October 10, 1997. Claimant was employed as a Laborer/Brick Mason, and was an hourly employee.
 When an individual takes a position as a brick mason, the rate of pay varies from job to job. Furthermore, travel is required.
 The next job site, after completing the work in Adams County, was in Cincinnati, Ohio. While the work the claimant had been performing in Adams County for Don Salyers was prevailing wage, the next job site in Cincinnati, Ohio was not prevailing wage.
 As the new job site was approximately 90 miles from the claimant's home, and was not prevailing wage, claimant chose to quit employment with Don Salyers."
Hearing Officer Bush reasoned in pertinent part as follows that Appellant Mason quit work without just cause:
 "The very nature of the work as a mason, requires an employee to travel from job site to job site. Furthermore, the rate of pay may change based upon whether the job is prevailing wage, or not prevailing wage. As the claimant quit employment with Don Salyers because he did not like the next job location, and the rate of pay for the job, he quit employment without just cause."
Hearing Officer Bush cited R.C. 4141.29(D)(2)(a) and (G) as the applicable law.
After the Unemployment Compensation Review Commission disallowed Appellant Mason's Application to Institute a Further Appeal, he filed a notice of appeal to the Adams County Common Pleas Court.
 Jerry E. Toller
Appellant Jerry E. Toller, who worked for Appellee Don Salyers Masonry for a $19.04 per hour prevailing wage at an Adams County site from July 22, 1996 until July 11, 1997, filed an application for unemployment compensation on July 20, 1997 when he was twenty-six years old. In his statement, Appellant Toller explained that he left his employment "because of wage getting cut from $19.04 an hour to around $10 to $12 range, and because of a two hour drive."
On August 13, 1997, the Ohio Bureau of Employment Services allowed Appellant Toller's claim, finding that he "quit employment with Appellee Don Salyers Masonry by refusing to accept a transfer to new work" that is "not suitable under Sections 4141.29(E) and (F) of the Ohio Revised Code."
After Appellee Don Salyers Masonry appealed and the Bureau affirmed on reconsideration, Appellee Don Salyers Masonry appealed to the Ohio Unemployment Compensation Review Commission. On December 9, 1997, the Review Commission held a hearing before Hearing Officer Robert S. Bush.
At the hearing, Appellant Toller testified that: (1) he knew that Appellee Don Salyers Masonry was based in Florence, Kentucky; (2) he worked as a mason's helper for Appellee Don Salyers Masonry at a job site approximately ten miles from where he was living; (3) he previously worked as a mason's helper for another employer; (4) he quit because although he had been earning "around" $23 per hour at a job site in Adams County, he did not want to work for $10 to $12 per hour at a job site in Cincinnati, Ohio; (5) the Cincinnati job site was approximately a two-hour drive away from his home; (6) he drove one and one-half hours to a job with a previous employer; (7) he earned only $8 to $10 with previous employers.
Don Salyers, who is president of Appellee Don Salyers Masonry, testified at the hearing that: (1) employees in the masonry business must change job sites when a job is finished; (2) employees don't earn prevailing wage at all job sites; and (3) Don Salyers Masonry has approximately fifteen to twenty job sites in a one hundred and fifty mile radius from Florence, Kentucky.
On December 23, 1997, Hearing Officer Bush held against Appellant Toller in pertinent part as follows:
 "Claimant worked for Don Salyers from July 22, 1997 to July 11, 1997. Claimant was employed as a Mason Tender, and was an hourly employee.
 When an individual takes a position as a mason tender, the rate of pay varies from job to job. Furthermore, travel is required.
 The next job site after completing the work in Adams County, was in Cincinnati, Ohio. While the work the claimant had been performing in Adams County for Don Salyers was prevailing wage, the next job site in Cincinnati, Ohio was not prevailing wage.
 As the new job site was approximately 90 miles from the claimant's home, and was not prevailing wage, claimant chose to quit employment with Don Salyers."
Hearing Officer Bush reasoned in pertinent part as follows that Appellant Toller quit work without just cause:
 "The very nature of the work as a mason tender, requires the employee to travel from job site to job site. Furthermore, the rate of pay may change based upon whether the job is prevailing wage or not prevailing wage. As the claimant quit employment with Don Salyers because he did not like the next job location, and the rate of pay for the job, he quit employment without just cause."
Hearing Officer Bush cited R.C. 4141.29(D)(2)(a) and (G) as the applicable law.
After the Unemployment Compensation Review Commission disallowed Appellant Hill's Application to Institute a Further Appeal, he filed a notice of appeal to the Adams County Common Pleas Court.
 The Common Pleas Court Proceedings
On March 16, 1998, the Adams County Court of Common Pleas consolidated the four appeals because "the issues raised by the appeals are identical in all four cases."
On May 18, 1998, the Adams County Common Pleas Court affirmed the Unemployment Compensation Review Commission's decision. The court wrote in pertinent part as follows:
 "The Review Commission found that the Appellants quit their employment because of dissatisfaction with travel to the next job site and with the rate of pay. The Review Commission held that the Appellants quit without just cause. The Court finds that the decisions of the Review Commission were not unlawful, unreasonable, or against the manifest weight of the evidence."
Appellants filed timely notices of appeal from the May 18, 1998 judgment.
 Our Decision
In their sole assignment of error, appellants assert that the trial court erred by finding that reliable, probative and substantial evidence supported the Unemployment Compensation Review Commission's decision.
R.C. 4141.28(O)(1) permits an employee to appeal an Unemployment Compensation Review Commission decision to the common pleas court. When a common pleas court reviews a decision of the Review Commission, the court does not sit as a trier of fact. The court must determine whether the Review Commission's decision was unlawful, unreasonable, or against the manifest weight of the evidence. R.C. 4141.28(O)(1) provides in pertinent part:
 * * * The appeal should be heard upon such record certified by the commission. After an appeal has been filed in the court, the commission may, by petition, be made a party to such appeal. If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. Any interested party shall have the right to appeal from the decision of the court as in civil cases.
In Tzangas, Plakas Mannos v. Administrator, Ohio Bur. ofEmp. Services (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207, paragraph one of the syllabus, the court held as follows that appellate courts may reverse a just cause determination only if it is unlawful, unreasonable, or against the manifest weight of the evidence:
 "An appellate court may reverse the Unemployment Compensation [Review Commission]'s 'just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence."
Under this standard of review, the Unemployment Compensation Review Commission retains its role as factfinder.Id., 73 Ohio St.3d at 697, 653 N.E.2d at 1210. Even though an appellate court might reach different conclusions than those reached by the Review Commission, an appellate court must affirm the Review Commission's decision unless it is unlawful, unreasonable, or against the manifest weight of the evidence.Id.; Irvine v. Unemployment Comp. Bd. of Review (1985), 19 Ohio St. 3
d at 18, 482 N.E.2d at 590. See, also, Angelkovski v.Buckeye Potato Chips Co. (1983), 11 Ohio App.3d 159, 161,463 N.E.2d 1280, 1282-1283.
An employee who quits work without just cause may not receive unemployment compensation benefits in Ohio. R.C.4141.29(D)(2)[6] provides in pertinent part as follows:
 (D) * * * [N]o individual may serve a waiting period or be paid benefits under the following conditions:
* * *
 (2) For the duration of the individual's unemployment if the administrator finds that:
 (a) The individual quit work without just cause or has been discharged for just cause in connection with the individual's work * * *.
* * *
 (b) The individual refused without good cause to accept an offer of suitable work when made by an employer * * *.
R.C. 4141.29(E) and (F) define as follows what constitutes a refusal to accept an offer of suitable work:
 (E) No individual otherwise qualified to receive benefits shall lose the right to benefits by reason of a refusal to accept new work if:
* * *
 (3) The work is at an unreasonable distance from the individual's residence, having regard for the character of the work the individual has been accustomed to do, and travel to the place of work involves expenses substantially greater than that required for the individual's former work, unless the expense is provided for.
 (4) The remuneration, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality.
 (F) * * * [I]n determining whether any work is suitable for a claimant in the administration of this chapter, the administrator, in addition to the determination required under division (E) of this section, shall consider the degree of risk to the claimant's health, safety, and morals, the individual's physical fitness for the work, the individual's prior training and experience, the length of the individual's employment, the distance of the available work from the individual's residence, and the individual's prospects for obtaining local work.
The test for determining what constitutes just cause to quit employment or good cause to refuse an offer of suitable work takes into consideration the particular facts of each case and the legislative purpose underlying the Unemployment Compensation Act. In Tzangas, Plakas Mannos, supra, the court described as follows what constitutes just cause:
 "In Irvine, supra, this court stated that ' "[t]raditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." ' Irvine, at 17, 482 N.E.2d at 89, citing Peyton v. Sun T.V. (1975), 44 Ohio App.2d 10, 12, 335 N.E.2d 751, 752. Just cause determinations in the unemployment compensation context, however, also must be consistent with the legislative purpose underlying the Unemployment Compensation Act. The Act exists ' "to enable unfortunate employees, who become and remain involuntarily unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of this modern day." ' (Emphasis sic.) Irvine at 17, 482 N.E.2d at 589, citing Leach v. Republic Steel Corp.
(1964), 176 Ohio St. 221, 223, 199 N.E.2d 3, 5. Thus, while a termination based upon an employer's economic necessity may be justifiable, it is not a just cause termination when viewed through the lens of the legislative purpose of the Act.
 The Act does not exist to protect employees from themselves, but to protect them from economic forces over which they have no control. When an employee is at fault, he is no longer the victim of fortune's whims, but is instead directly responsible for his own predicament. Fault on the part of the employee's part separates him from the Act's intent and the Act's protection. Thus, fault is essential to the unique chemistry of a just cause termination."
In the case sub judice, we agree with the trial court that the Unemployment Compensation Review Commission's decisions are not unlawful, unreasonable, or against the manifest weight of the evidence. Testimony in the record supports the findings by Hearing Officer Bush and related findings by the other hearing officers that "[t]he very nature of the work as a mason tender, requires the employee to travel from job site to job site." Testimony in the record also supports findings by Hearing Officer Bush and related findings by the other hearing officers that "the rate of pay may change based upon whether the job is prevailing wage or not prevailing wage." Appellants had previously worked for less wages than Appellee Don Salyers Masonry offered them for working at the Cincinnati, Ohio job site. Appellee Don Salyers Masonry is based in Florence, Kentucky outside Cincinnati, Ohio and works at job sites within a one hundred and fifty mile radius. To allow appellants to receive unemployment compensation benefits under these particular circumstances would be inconsistent with the legislative purposes of the Unemployment Compensation Act.
Accordingly, based upon the foregoing reasons, we overrule appellants' assignment of error.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that Appellee Administrator of the Ohio Bureau of Employment Services recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, J.: Concur in Judgment Opinion
For the Court
 BY: _____________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[2] During the course of the proceedings below, an amendment to R.C. 4141.28(O) changed the name of the former Unemployment Compensation Board of Review. To avoid confusion in this opinion we will refer to the body under its new name, the Unemployment Compensation Review Commission.
[3] On his application Appellant Hill stated he began work on May 17, 1996, but at the hearing both he and his employer's witness testified that he began work on May 13, 1996. The hearing officer found that Appellant Hill began work on May 13, 1996.
[4] On his application Appellant Hill stated his last day of work was May 9, 1997, but at the hearing both he and his employer's witness testified that his last day of work was May 16, 1997. The hearing officer found that Appellant Hill's last day of work was May 17, 1997.
[5] In his statement, Appellant Hill listed his wage at $19.04 per hour, but he testified at the hearing that he earned $18.47 "plus, uh, almost $5.00 per hour in fringe benefits."
[6] Although the Review Commission's hearing officers stated that R.C. 4141.29(D)(2)(a) is the applicable law, appellants and Appellee Administrator of the Ohio Bureau of Employment Services, in their briefs on appeal, cited R.C.4141.29(D)(2)(b) and discussed what constitutes "suitable work."
In the case sub judice, there appears to be a blurry line between the two sub-paragraphs of the statute. R.C.4141.29(D)(2)(a) applies to individuals who quit work without just cause. R.C. 4141.29(D)(2)(b) applies to individuals who refuse "without good cause to accept an offer of suitable employment when made by an employer." Appellants, by refusing to accept Appellee Don Salyers Masonry's offer of suitable work at the Cincinnati job site, quit work without just cause.